# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYREL ATCHLEY; SCARLET "TARA" ATCHLEY; and MAGNASSUN ATCHLEY, a minor by and through his guardian Ad Litem, Mesa Atchley,<br><br>Plaintiffs,<br><br>vs.<br><br>LA MESA POLICE OFFICER SEAN SNOW; LA MESA POLICE OFFICER RODOLFO SALAZAR; CITY OF LA MESA; COUNTY OF SAN DIEGO; and MARIA LUISA CORIA,<br><br>Defendants. | CASE NO. 11cv1516 JM(WMc)<br><br>ORDER GRANTING MOTION TO DISMISS; DENYING MOTION TO STRIKE; GRANTING LEAVE TO AMEND |

Pursuant to Fed.R.Civ.P. 12(b)(6), Defendants County of San Diego ("County") and Maria Luisa Coria ("Coria") move to dismiss certain claims alleged in the complaint for failure to state a claim. Pursuant to Fed.R.Civ.P. 12(f), Defendant Officers Sean Snow ("Snow") and Rodolfo Salazar ("Salazar") separately move to strike portions of Plaintiffs' complaint. Plaintiffs Tyrel Atchley ("Atchley"), Scarlett "Tara" Atchley ("Tara"), and Magnassun Atchley ("M.A.") oppose all motions. Pursuant to Local Rule 7.1(d)(1), the matters presented are appropriate for decision without oral argument. For the reasons set forth below, the court grants County and Coria's motion to dismiss, denies Snow and Salazar's motion to strike, and grants Plaintiffs 15 days leave to amend from the date of entry of this order.

On July 8, 2011, Plaintiffs commenced this civil rights action against County, Coria, a social

worker with the Health and Human Services Division of County, City of La Mesa, and La Mesa police officers Snow and Salazar. (Compl. ¶¶4-8). Plaintiffs allege ten causes for: (1) interference with parental rights in violation of 42 U.S.C. §1983; (2) interference with the child's fundamental right to be with parents in violation of 42 U.S.C. §1983; (3) failure to supervise in violation of 42 U.S.C. §1983; (4) intentional infliction of emotional distress; (5) battery; (6) assault; (7) false imprisonment; (8) negligence; (9) violation of Cal. Civil Code §43; and (10) violation of Cal. Civil Code §52.1.

Plaintiffs' claims arise from a series of events commencing on the night of July 9, 2010.[1] On that date, Atchley asked a neighbor to watch his sleeping son while he went to the grocery store. While absent from the apartment, another neighbor, Leesha Chapman, a.k.a. Stormy, allegedly entered the apartment and took some of Tara's belongings, including jewelry. (Compl. ¶25). Once Atchley returned to the apartment, he received a telephone call from Stormy demanding that she be paid for the return of the property. Atchley went to Stormy's apartment - she lived in the same complex - and a confrontation ensued with Stormy and two men who were at the apartment. After a brief struggle, Atchley then fled the apartment leaving behind his cell phone, hat and some keys. (Compl. ¶28). Atchley then called 911 and Officers Snow and Salazar responded to the call.

Atchley, who was in his car when the officers arrived, got out of the car and explained what happened. The officers then asked why he called the police. The officers then allegedly mocked and laughed at him. (Compl. ¶29). Atchley got back in his car and went to his apartment complex.

Meanwhile, Tara, who was on deployment with the U.S. Navy in the middle of the Pacific Ocean, happened to call Atchley's cell phone from the Navy Ship. Stormy answered the cell phone that Atchley had left behind at her apartment. Stormy called her names and said that Atchley stole "dope" from her. (Compl. ¶31). At 10:11 p.m. Tara called the La Mesa Police Department. Officer Snow went to the apartment and called Tara informing her that the apartment was in disarray and smelled like marijuana. (Comp. ¶ 32). Tara then informed the officers that she desired to file a missing child's report. At around 5:00 the next day, Child Protective Services ("CPS") left a message for Tara that M.A. was in the custody of CPS. (Compl. ¶33).

---

[1] The court notes that the complaint pleads extensive evidentiary facts not required by federal notice pleading rules. See Fed.R.Civ.P. 8(a).

After the initial contact with Officers Snow and Salazar, Atchley drove to the apartment of LaVonne where he had left M.A. (Compl. ¶35). Shortly thereafter, Officers Snow and Salazar, along with about five additional officers, arrived to LaVonne's apartment and asked Atchley to step outside. After speaking with the officers, the officers left the area. About 30-45 minutes later, Atchley left LaVonne's apartment and headed to a hotel. While on route, he received a call from a neighbor who informed him that the police were there and requested that Atchley and M.A. return to the apartment complex. (Compl. ¶¶37-38).

Atchley arrived back at his apartment carrying M.A. The officers allegedly ordered Atchley to put M.A. down and to place his hands behind his back. (Compl. ¶39). Atchley did not want to comply because M.A. was asleep and the ground was wet. Atchley then handed M.A. over to Officer Salazar. Officer Snow then rushed Atchley and threw him to the ground. Officer Snow then had Atchley sit on a step and informed him that they were "taking [his] son tonight because [Atchley] was not fit to care for [his] son." (Compl. ¶41). Atchley became upset at losing his son. Officer Salazar then allegedly placed his hand on M.A. and said, "You hear that, that's your daddy [and he] is a fu**ing loser." (Compl. ¶43).

The officers told Atchley that both his mother, Mesa Atchley, and Tara had requested that they take custody of M.A. and leave Atchley in the apartment alone. After the officers left, Atchley called his mother, Mesa, and was informed that she had never requested that M.A. be taken from him. (Compl. ¶44).

On July 10, 2011, Mesa flew to San Diego and went to the Polinsky Children's Center to meet with social worker and defendant Coria. The next day, M.A. was not returned to Atchley, (Compl. ¶47), but to Mesa.

Later that day on July 10, 2011, at around 9:30 p.m., Atchley went to his apartment to retrieve some personal belongings. A companion, Gilpin, went to the apartment to pick up some clothes. Atchley waited in the car when an officer tapped on the window and ordered him out of the car. The police found some pills in his pocket and Atchley explained that they were prescription medications and that the prescriptions were in the glove compartment. Officer Atwood, the arresting officer, then arrested Atchley for two non-reduceable driving felonies and a reckless driving charge. Atchley spent

five days in jail and was released on July 15, 2010. Ultimately, on July 23, 2010, Atchley brought his two medical prescriptions to court and, under the advice of his public defender, entered into a plea bargain and the two non-reduceable felonies were dismissed. He paid a fine of $827 and attended a Mothers Against Drunk Driving class. (Compl. ¶53).

In the meantime, Tara received emergency leave and went to the Polinsky Children's Center where she was presented with a safety plan prepared by Coria. Tara was informed that if she agreed with the plan, she could take M.A. home. If not, M.A. would remain in the center. The plan stated that Atchley associated with persons who are known as substance abusers and dealers and that there was "possible" substance abuse by Atchley. Even though she disagreed with the safety plan, Tara signed the document. Defendant Coria allegedly told Tara and Mesa that she had video surveillance of Atchley stealing washers, dryers and rims off of cars. (Compl. ¶56). Tara denied any drug use by Atchley. Shortly thereafter, Mesa returned to Seattle with M.A.

Over the next several weeks, Atchley attempted to find out more information from the Department of Health Services. On August 20, 2011, Coria presented Tara and Atchley with a second safety plan. Coria represented that M.A. had been exposed to methamphetamine and amphetamines. Coria also requested that they both take drug tests and represented that their refusal would result in a finding that M.A. was "in imminent danger and have him removed from [the] home." (Compl. ¶67). On November 1, 2011, Tara and Atchley learned that M.A. had negative drug tests and that Coria had "lied" about the positive drug test results. (Compl. ¶70).

In September 2011, Coria informed Tara and Atchley that the case had been "promoted to voluntary contract." (Compl. ¶71). They refused to sign the contract. On October 14, 2010, and with M.A. still living with Mesa in Washington State, the case was closed. (Compl. ¶74).

Plaintiffs allege that Atchley had recorded conversations "as proof of Coria and County's lies." (Compl. ¶75). However, on November 9, 2010, his apartment was burglarized and the recorded conversations were stolen along with a video camera, laptop, and flash drives. Both Tara and Atchley have suffered extreme emotional distress because of the alleged events. (Compl. ¶¶76-81).

Based upon the above generally described conduct, Defendants County and Coria move to dismiss certain claims alleged in the complaint and Defendants Snow and Salazar to strike portions

of the complaint.

## DISCUSSION

**Legal Standards**

<u>General Pleading Standards</u>

Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in "extraordinary" cases. <u>United States v. Redwood City</u>, 640 F.2d 963, 966 (9th Cir. 1981). Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990). Courts should dismiss a complaint for failure to state a claim when the factual allegations are insufficient "to raise a right to relief above the speculative level." <u>Bell Atlantic Corp v. Twombly</u>, 550 U.S. 544, 555 (2007) (the complaint's allegations must "plausibly suggest[]" that the pleader is entitled to relief); <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009) (under Rule 8(a), well-pleaded facts must do more than permit the court to infer the mere possibility of misconduct). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> at 1949. Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> The defect must appear on the face of the complaint itself. Thus, courts may not consider extraneous material in testing its legal adequacy. <u>Levine v. Diamanthuset, Inc.</u>, 950 F.2d 1478, 1482 (9th Cir. 1991). The courts may, however, consider material properly submitted as part of the complaint. <u>Hal Roach Studios, Inc. v. Richard Feiner and Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

Finally, courts must construe the complaint in the light most favorable to the plaintiff. <u>Concha v. London</u>, 62 F.3d 1493, 1500 (9th Cir. 1995), <u>cert. dismissed</u>, 116 S. Ct. 1710 (1996). Accordingly, courts must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. <u>Holden v. Hagopian</u>, 978 F.2d 1115, 1118 (9th Cir. 1992). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. <u>In Re Syntex Corp. Sec. Litig.</u>, 95 F.3d 922, 926 (9th Cir. 1996).

<u>Pleading Civil Rights Claims</u>

Prior to <u>Iqbal</u> and <u>Twombly</u>, "a claim of municipal liability under § 1983 is sufficient to

1  withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that
2  the individual officers' conduct conformed to official policy, custom, or practice." Whitaker v.
3  Garcetti, 486 F.3d 572, 581 (9th Cir.2007). In addressing the impact of Iqbal and Twombly on the
4  pleading standards for civil rights cases, the Ninth Circuit recently stated:

> we can at least state the following two principles common to all of them. First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

9  AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631,637 (9th Cir. 2012) (quoting Starr v. Baca,
10 652 F.3d 1202 (9th Cir.2011)).

11 **The County's Motion**

12       The Civil Rights Claim

13       County moves to dismiss the complaint for failure to state a claim for municipal liability.
14 Municipalities, their agencies and their supervisory personnel cannot be held liable under section 1983
15 on any theory of respondeat superior or vicarious liability. They can, however, be held liable for
16 deprivations of constitutional rights resulting from their formal policies or customs. Monell v. New
17 York City Department of Social Services, 436 U.S. 658, 691-93 (1978); Watts v. County of
18 Sacramento, 256 F.3d 886, 891 (9th Cir. 2001); Shaw v. California Dep't of Alcoholic Beverage
19 Control, 788 F.2d 600, 610 (9th Cir. 1986). "A § 1983 action against a city fails as a matter of law
20 unless a city employee's conduct violates one of the plaintiff's federal rights." Orin, 272 F.3d at 1217.
21       Locating a "policy" ensures that a municipality "is held liable only for those deprivations
22 resulting from the decisions of its duly constituted legislative body or of those officials whose acts may
23 be fairly said to be those of the municipality." Board of the County Comm'rs of Bryan County,
24 Oklahoma v. Brown, 520 U.S. 397, 403-04 (1997) (citing Monell, 436 U.S. at 694). Similarly, an act
25 performed pursuant to a "custom" which has not been "formally approved by an appropriate
26 decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is
27 so widespread as to have the force of law." Id. (citing Monell, 436 U.S. at 690-691); see
28 also Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989) (holding that municipal liability under

§ 1983 may be shown if Plaintiff proves that employee committed alleged constitutional violation pursuant to a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity.").

In cases in which a plaintiff alleges there is an official policy authorizing or condoning unconstitutional acts, the Supreme Court has held that to prevail a plaintiff must demonstrate an "affirmative link" between his or her deprivation and "the adoption of [a] plan or policy by [the supervisors]--express or otherwise--showing their authorization or approval of such misconduct." Bergquist v. County of Cochise, 806 F.2d 1364, 1369-1370 (9th Cir. 1986) (quoting Rizzo v. Goode, 423 U.S. 362, 370-371 (1976)).  This causal prerequisite was made clear by the Supreme Court in Board of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397 (1997): "It is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality . . . [t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a causal link between the municipal action and the deprivation of federal rights." Id. at 404 (italics in original).

Here, Plaintiffs generally allege that County maintains "a custom, policy or procedure that allowed social workers . . . to lie, make false reports based on fabricated evidence and threaten to revoke the custodial and parental rights of parents leading to loss of care and custody between parents and children, without sufficient supervision,"  (Comp. §103), and similarly maintains a policy, practice, or custom to not supervise social workers. (Compl. ¶102).  The mere recitation of the legal standards for the imposition of municipal liability is insufficient under AE ex rel. Hernandez, 666 F.3d 631, to state a Monell claim. Plaintiffs must set forth further allegations from which an inference may be drawn that plausibly suggests the County has a custom, policy, or practice allowing social workers to lie and engage in the filing of false reports or failing to supervise.  The mere recitation of the Monell legal standard does not satisfy Plaintiffs' burden.

In sum, the court grants the County's motion to dismiss with 15 days leave to amend from the date of entry of this order.

///

### The Section 52.1 Claim

County argues that Section 52.1 only applies to private actors and government agents, and not to government entities. Civil Code section 52.1(a) provides that if a person interferes, or attempts to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of the constitutional or statutory rights of "any individual or individuals," the Attorney General, or any district or city attorney, may bring a civil action for equitable or injunctive relief. Section 52.1(b) allows "[a]ny individual" so interfered with to sue for damages. Plaintiffs Atchley and M.A. allege that County "intentionally interfered with their civil rights using threats and intimidation" and "by preventing them from exercising their rights to maintain and preserve family relationships, and they threatened retaliation and to permanently deprive Plaintiff Atchley of custody of their child if they attempted to exercise such rights." (Compl. ¶¶156-57).

Section 52.1 "is part of a comprehensive legislation designed to combat hate crimes." Venegas v. County of Los Angeles, 153 Cal.App.4th 1230, 1242 (2007). To that end, any "person or persons . . .[who] interfere by threats, intimidation, or coercion" with the enjoyment of constitutional or statutory rights is liable under Section 52.1. Id. Here, even if the County is a person for purposes of Section 52.1, Plaintiffs fail to allege any intentional acts of County to interfere with Plaintiff's rights. At most Plaintiffs allege, in conclusory fashion, that County has a policy, custom, or practice permitting social workers to lie and make false reports. (Compl. ¶¶102-03). However, such conclusory pleading is insufficient to satisfy the pleading requirements of AE ex rel. Hernandez, 666 F.3d 631. Similarly, Plaintiffs fail to identify any authority permitting respondeat superior liability for an alleged Section 52.1 violation. Consequently, the court dismisses this claim.

In sum, the court grants the motion to dismiss this claim against County with 15 days leave to amend from the date of entry of this order.

**Coria's Motion**

### The Civil Rights Claims

Plaintiff alleges two separate civil rights claims against Coria. First, Plaintiffs allege that Coria wrongfully interfered with Atchley and Tara's fundamental parental rights, and second, that she interfered with M.A.'s fundamental rights to be with his parents. (Compl. ¶¶88-100).

To plead procedural due process violations, a plaintiff must allege: (1) a life, liberty or property interest exists and has been subject to interference by the state; and (2) the procedures attendant upon the deprivation of an existing interest were constitutionally insufficient. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1990).

(1) **Protected Interest**

Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. Graham v. Connor, 490 U.S. 386, 393-94 (1989). The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. Board of Regents v. Roth, 408 U.S. 564, 569 (1972).

It is well-established that "parents and children have a well-elaborated constitutional right to live together without government interference." Wallis v. Spencer, 202 F.3d 1126, 1136 (9th Cir. 2000). Here, the complaint alleges that Officers Snow and Salazar removed the children from Atchley's care. (Compl. ¶89, 96). In contrast to these specific allegations of interference with liberty interests, Plaintiffs allege that Coria's conduct was limited to taking charge and custody of M.A., lying about the results of M.A.'s drug test and threatening both parents with the loss of the child. Id. The court rejects the notion that Coria interfered with the parent-child relationship simply by exercising her employment-related responsibilities over M.A. State law provides that a minor, taken into custody by a police officer, pursuant to Cal. Wel. and Inst. Code §313(a), must be released within two work days. This two-day period affords an opportunity to investigate relevant circumstances to determine whether to release the child to a responsible party or to file a dependency petition. Upon filing a petition, the Superior Court Juvenile Division conducts a hearing to determine whether to further detain the child. Wel. & Inst. Code §315, 319. Here, Plaintiffs simply fail to identify the protected right allegedly violated by Coria as M.A. was returned within the 48-hour period and Coria was not involved in the decision to remove M.A. from Atchley.

With respect to the allegations that Coria misrepresented M.A.'s drug test results or threatened the parents with loss of the child if they failed to adopt the proposed safety plan, these allegations similarly fail to give rise to a claim for unconstitutional interference with parental rights. By the time

these alleged events occurred, M.A. had been returned and was in the custody of Tara. Furthermore, to the extent Plaintiffs allege that Coria attempted to interfere with their parental rights, the court notes that an attempt to violate constitutional rights is not generally actionable; there must be an actual violation of the right. See Andree v. Ashland County, 818 F.2d 1306, 1311 (7th Cir.1987).

In sum, the court concludes that Plaintiffs fail to sufficiently allege a violation of protected constitutional rights to state a civil rights claim.

### (2) **Procedural Safeguards**

The basic requirements of due process are the right to notice and the opportunity to be heard "at a meaningful time and in a meaningful manner." Logan v. Zimmerman Brush Co., 455 U.S. 422, 437 (1982). The extent and manner of determining what process is due in any given situation depends on "(1) the private interests at stake; (2) the risk that the procedure used will lead to erroneous results and the probable value of the suggested procedural safeguard; (3) and the governmental interest affected." Little v. Streeter, 452 U.S. 1 (1981); see also Matthews v. Eldridge, 424 U.S. 319, 335 (1976). This "balancing test" determines what the due process clause requires, even if state law or Department of Health and Safety regulations call for something different. Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532, 541 (1985); Vitek v. Jones, 445 U.S. 480, 491 (1980).

Here, Plaintiffs fail to sufficiently allege that they were deprived of notice or a reasonable opportunity to be heard. Without such allegations, Plaintiffs fail to state a claim. Accordingly, the court grants the motion to dismiss this claim against Coria.

In sum, the court grants Coria's Rule 12(b)(6) motion to dismiss the civil rights claim with 15 days leave to amend from the date of entry of this order.

The Intentional Infliction of Emotional Distress, False Imprisonment, Negligence, Invasion of Privacy, and Section 52.1 Claims

The state law issues raised by Plaintiffs implicate immunities afforded social workers performing their employment-related duties. As noted in Jenkins v. County of Los Angeles, 212 Cal.App.3d 278 (1989):

> "Should we hold a state or social worker acting within the scope of his or her employment is not absolutely immune from suits arising from the voluntary intervention to protect a child, we would indirectly eliminate the protection afforded to children. The state's interest in preventing child abuse will be diminished due to fear of retaliatory suits. The state and its social workers would not take the child into

custody until the inflicted injuries could be 'recorded' to meet the 'objectively reasonable' test of qualified immunity or until they obtain a court order which ensures absolute immunity. Such a result negates the purpose of child protective services by postponing prevention of further abuse to avoid liability."

Id. at 287.

Here, the court concludes that the allegations surrounding Coria's initial investigation pursuant to Cal. Wel. & Inst. Code §§315, 319, 366.5, 366.21 are entitled to immunity. Often times, a "social worker must make a quick decision based on perhaps incomplete information as to whether to commence investigations and initiate proceedings against a parent who may have abused their children." Meyers v. Contra Costa County Dept. Social Srvs., 812 F.2d 1154, 1157 (9th Cir. 1987). Under these circumstances, "social workers must be absolutely immune from suits alleging the improper investigation of child abuse, removal of a minor from the parental home based upon suspicion of abuse and the instigation of dependency proceedings." Alicia T. v. County of Los Angeles, 222 Cal.App.3d 869, 881 (1990).

The court concludes that Coria is afforded immunity (absolute immunity and discretionary immunity under Cal.Gov. Code §820.8) for the initial investigation and for the time period at least up to the return of M.A. on July 11, 2010. Accordingly, the court grants dismissal of the Intentional Infliction of Emotional Distress claim as the allegations are based upon the initial detention of M.A.; the False Imprisonment claim as this relates to the initial investigation; the Negligence claim to the extent based upon the initial investigation; the Invasion of Privacy claim to the extent based upon the initial investigation; and the Section 52.1 claim to the extent based upon the initial investigation.

In sum, the court grants in part and denies in part the motion to dismiss these state law claims. The court also grants Plaintiffs 15 days leave to amend the complaint.

**The Motion to Strike**

Legal Standards

Federal Rule of Civil Procedure 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. . . ." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (quoting Fantasy, Inc. v. Fogerty, 984 F2d. 1524, 1527 (9th Cir.

1993, <u>rev'd on other grounds</u> 510 U.S. 517 (1994)).

### The Motion

Defendants Snow and Salazar move to strike portions of the complaint and the prayer for punitive damages on the ground that many of the allegations are immaterial and impertinent. For example, the complaint alleges that "Officers Snow and Salazar never told Atchley or Tara that they had personally spoken to each one of them," (Comp. ¶31), and "Officer Salazar rubs Magnassun's sternum. . .," (Compl. ¶¶35, 36). While many of the allegations are unnecessary and unduly detailed, such allegations are not necessarily subject to the application of Rule 12(f) to strike the allegations. Even though portions of the complaint are overly prolix, the court denies the motion as Rule 12(f) motions are disfavored, see <u>LeDuc v. Kentucky Central Life Ins. Co.</u>, 814 F.Supp. 820, 830 (N.D Cal. 1992), and the relevance of particular allegations are often only established after discovery is complete.

Federal courts require notice, and not fact specific pleading. The court notes that Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Twombly</u>, 550 U.S. at 555. While portions of the complaint may violate this provision, the court notes that Defendants bring this motion pursuant to Rule 12(f) and not Rule 8(a). Accordingly, the motion to strike is denied.

In sum, the court grants County and Coria's motion to dismiss the challenged claims with 15 days leave to amend from the date of entry of this order. The court also denies Officer Snow and Salazar's motion to strike.

**IT IS SO ORDERED.**

DATED: April 16, 2012

_____
Hon. Jeffrey T. Miller
United States District Judge

cc:	All parties